**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,                     Case No.      07-cr-20400
                                          Hon.   Julian Abele Cook, Jr.

Vs.

D-3    DAVID DORRIS,

       Defendant.

_____/

| | |
|---|---|
| DIANE MARION, P33403 | ERNST WENDL, P41485 |
| Assistant United States Attorney | Attorney for Defendant-3, DAVID DORRIS |
| 211 West Fort Street, Ste. 2001 | PO Box 81304 |
| Detroit, MI 48226 | Rochester, MI 48308-1304 |
| 313-226-9703 | 248-659-7799 |

_____/

### <u>DEFENDANT DAVID DORRIS' SENTENCING MEMORANDUM</u>

### I.  Introduction

DAVID DORRIS will appear for sentencing before the Court on Wednesday, July 21, 2010, at 1:00 p.m., having pled guilty to one count of assault with a deadly weapon, under a Rule 11 Plea Agreement.

The Plea Agreement encompasses Mr. David Dorris' becoming involved in an altercation while attending a swap meet in Indiana, where he used a foot peg to strike an individual who he believed was attacking another individual, believing he was coming to the aid of the other party.  In addition to Mr. Dorris' acceptance of responsibility, under the Plea Agreement, the prosecution stipulated to Mr. David Dorris receiving a four-level reduction for minimal participation, U.S.S.G. ch. 3, pts. A, B, C, resulting in a total offense level of 14, and a guideline range of 15 to 21 months.

**II.  The Advisory Sentencing Guidelines**

The United States Supreme Court in 2005 held that its Sixth Amendment holding in Blakely v Washington, 124 S. Ct. 2531 (2004), and Apprendi v New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines.   See, United State v Booker, 125 S. Ct. 738 (2005).   The Court concluded that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.  Id at 756.  Based on this conclusion, the Court found those provisions of the Federal Sentencing Reform Act of 1984, 18 U.S.C. sect. 3553(b)(1) or which rely upon the Guidelines' mandatory nature, 18 U.S.C. sect. 3742(e), were incompatible with its Sixth Amendment holding.  Booker at 756.

Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of various sentencing factors set forth in 18 U.S.C. sect. 3553(a).  The primary directive in Section 3553(a) is for the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining a minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

1. The nature and circumstances of the offense and the history and characteristics of the defendant.  Sect. 3553(a)(1)

2. The "kinds of sentences" available.  Sect. 3553(a)(3)

3.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  Sect. 3553(a)(6)

4.  The need to provide restitution to any victims of the offense.  Sect. 3553 (a)(7)

Other statutes also give guidance in sentencing.  Under 18 U.S.C. sect. 3582, imposition of a term of imprisonment is subject to the following limitation:  In determining whether, and to what extent, imprisonment is appropriate based on the section 3553(a) factors, the judge is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Under 18 U.S.C. sect. 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  This statutory language overrides the now advisory policy statements in part "H" of the sentencing guidelines, which list as 'not ordinarily relevant" a variety of factors such as the defendant's age, educational and vocational skills, mental or emotional condition, drug or alcohol dependence, and lack of guidance as a youth.  See, U.S.S.G. sect. 5H1.

Accordingly, in each case, a sentencing court must now consider all of the Section 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing.

As stated by the Sixth Circuit Court in United States v Foreman, 436 F3d 638, 644 (6th Cir. 2006):

> It is worth noting that a district court's job is not to impose a "reasonable" sentence.  Rather, a district court's mandate is to impose a "sentence sufficient, but not greater than necessary to comply with the purposes" of section 3553(a)(2).  Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task.  *Id.* at fn. 1.

**A.  Guidelines**

The probation department has calculated a guidelines range of 27 to 33 months based on a total offense level of 18 and a criminal history category of I, departing from the prosecution's stipulation of Mr. David Dorris being a minimal participant.  Both the government and Mr. David Dorris agreed in the Rule 11 Plea Agreement that the 15 to 21 month range pursuant to a total offense level of 14, was the appropriate guideline range, and that neither party "may take a position in this Court contrary to any position of that party reflected on the worksheets…".  Who better than the prosecution, who is intimately aware of the evidence and the fact pattern of its own case, to judge whether Mr. Dorris is a minimal participant?

This Honorable Court, of course, also retains its ability to consider further, the policy statement of U.S.S.G. sect. 5H1.4. Physical Condition, Including Drug and Alcohol Dependence or Abuse; Gambling Addiction:

"Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted.  However, an extraordinary physical impairment may be reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

**B.  History and Characteristics of the Defendant**

Mr. David Dorris is not the person one would normally associate with being in a motorcycle club. Further, he is lucky to be alive, having survived several coronary incidents, and suffering from numerous physical ailments.  His physical condition is seriously infirm, as evidenced by the attached letters submitted by his treating physicians, and his being adjudicated disabled and the social security administration.

Mr. David Dorris is currently 59 years old with documented ASCAD.  He has undergone coronary artery bypass graft surgery three times.  There have been several incidents of unstable angina requiring repeat cardiac catheterization, resulting in angioplasty and stenting.  Mr. Dorris also suffers from

hypertensive heart disease, hyperlipidemia, diabetes mellitus, anxiety, posttraumatic stress disorder, and probably sleep apnea.  Physical activity and stress result in chest discomfort and shortness of breath.  Mr. Dorris will have life long angina, and is considered always at risk for another acute myocardial infarction.  His cardiologist, Dr. Marc O. Gosselin, expresses extreme concern about Mr. Dorris' health in the event of incarceration.  (See, letters from Marc O. Gosselin, D.O., F.A.C.C., and Natalie Okerson, M.D., attached).

Mr. Dorris is also on an intense pharmacological regiment, including prescriptions for Glucophage 1,000 mg b.i.d.; Prinvil 10 mg daily; Lopressor 50 mg b.i.d.; aspirin 325 mg daily; Plavix 75 mg daily; Xanax 2 mg b.i.d.; Imdur 30 mg daily; Vicodin b.i.d., p.r.n. pain; Lovastatin 40 mg h.s.; Nitroglycerin sublingual, glyburide 2.5 mg daily; Protonix 40 mg daily; Glucotrol 5 mg qd; Metformin 1000 mg bid; Lisinopril 10 mg qd; and Metoprolol 50 mg bid.  (See, letters from Dr. Gosselin and Dr. Okerson).

Apart from his medical problems, Mr. David Dorris displays genuine positive characteristics.  Mr. Dorris is highly regarded and respected by his neighbors and those persons around him who have the opportunity to see him at all different times of the day and night, over a period of years, and even decades, lending credibility to Mr. Dorris' true character.

Mr. Harvey Curley, a neighbor and former mayor of the city of Eastpoint, describes Mr. Dorris as a courteous neighbor who continues to insist on calling him "Mr. Curley", and relates how Mr. Dorris watches over people in the neighborhood, and helped him with auto related problems.  (Letter, attached).

Mr. Andrew Szalay, Mr. Dorris' insurance agent, describes how Mr. Dorris took time out in the past to help Mr. Szalay with maintenance problems around the building Mr. Szalay occupies. (Letter, attached).

Mr. Chester Dettloff, a friend and manager of an ABC Warehouse store, states Mr. Dorris exhibits nothing but respect and courtesy to his employees. (Letter, attached).

Mr. Daniel K. Gersch, Sr., proprietor of an auto body shop, confirms Mr. Dorris' helpful nature by attesting to the fact that Mr. Dorris is willing to help at anytime of the day. (Letter, attached).

Mr. Chris McKee, a neighbor, relates how Mr. Dorris still calls him "sir", how Mr. Dorris helps people in the neighborhood with their cars, lawnmowers, and the like, and described Mr. Dorris as always eager to lend a helping hand. (Letter, attached).

Another neighbor, Ms. Darlene Barducci, describes Mr. Dorris as courteous and responsible with everyone in the neighborhood, and as never having given anyone any trouble.  She also relates a time when he helped her obtain a free cell phone available for low income persons. (Letter, attached).

Mr. Steven Reitzloff, another neighbor, describes Mr. Dorris as someone everyone can rely on, always willing to lend a hand, and who supported Mr. Reitzloff and his family during the loss of Mr. Reitzloff's father.  One one occasion, Mr. Dorris even repaired Mr. Reitzloff's vehicle one winter day when her was at work. (Letter, attached).

These words of support from people who live around Mr. Dorris, and who are in a position to observe Mr. Dorris at all hours of the day and night, seven days a week, describe the true character of Mr. Dorris over a period of 15 years and more.  Clearly, the type of support that cannot be fabricated in the short period of time between a criminal charge and the time of sentencing for the purpose of creating a false and misleading persona.

Applying the 18 U.S.C. sect. 3553(a) factors to this offense, and to this individual defendant as described above, suggests that a downward variance is warranted.  A sentence that is sufficient, but not greater than necessary, to comply with the statutory directives.

### C.  Need for the Sentence to Promote Certain Statutory Objectives

Mr. David Dorris is well aware of the objectives of the statute and contends that a downward variance will still promote those objectives.  Mr. David Dorris understands the need to be punished to reflect the seriousness of the offense as defined by the statute.  He simply pleads that his punishment be just.  Moreover, a significant downward variance will still afford deterrence, protect the public and promote respect for the law.

### D.  Conclusion

*Booker* allows this Court freedom to fashion the type of sentence which is appropriate.  Although Mr. David Dorris has already received a reduction for acceptance of responsibility, counsel respectfully submits that the reduction is inadequate to reflect Mr. David Dorris' complete and total acceptance, and to reflect his true character, in addition to addressing the medical challenges he faces.

Mr. Dorris is married, with children and grandchildren, and has very strong family ties.  He has volunteered his time to various causes over the years, including those involving children, and regularly helps those in need of help in his neighbor and community.  He has significant support from his friends and neighbors, as evidence by the attached letters of support.

All these factors, while sometimes discouraged under the guidelines previously, are now highly relevant in fashioning a just and appropriate sentence.  The Court has an ideal opportunity in this case to take advantage of Mr. Dorris' unique character to help rehabilitate Mr. Dorris and help the community, while not necessarily making Mr. Dorris a burden on the public.  Mr. Dorris's age and health concerns would put certain burdens on the judicial system if he would be incarcerated.  If the Court would consider an alternative, such as house arrest, a tether, and a significant period of community service, the goals of rehabilitation could be met without putting the burden of Mr. Dorris'

health care upon the people, while having Mr. Dorris give back to the community in tangible and positive ways.

For the reasons stated, including issues related to his health, Mr. David Dorris respectfully requests this Honorable Court consider a downward adjustment to the stipulated range stipulated between him and the prosecutor, and consider house arrest and a significant period of community service as an appropriate sentence to allow for, and to meet the goals of sentencing.

Respectfully submitted,

/s/ Ernst Wendl

Dated: July 20, 2010

Ernst Wendl, P41485
Attorney for D-3, DAVID DORRIS
PO Box 81304
Rochester, MI 48308-1304
248-659-7799